# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4465 | **DATE** | 8/1/2003 |
| **CASE TITLE** | DAVID P. LEIBOWITZ vs. KOVNVARA IMSORN, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **The bankruptcy court's judgment in favor of defendants is AFFIRMED.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | AUG 05 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 10 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID P. LEIBOWITZ, | |
| Appellant, | |
| v. | No. 02 C 4465<br>No. 02 C 4466<br>Judge James B. Zagel |
| KOVNVARA IMSORN and RANI IMSORN, | |
| Appellees. | Appeal from U.S. Bankr. Ct. Nos.: 01 B 29705; 01 A 01248; 01 A 01250. |

## OPINION

Appellant David P. Leibowitz, as Chapter 7 trustee for Rungsarn Imsorn ("Rungsarn"), filed two complaints in the United States Bankruptcy Court for the Northern District of Illinois against Rani Imsorn ("Rani") and Kovnvara Imsorn ("Kovnvara") to recover funds transferred to them by Rungsarn. Leibowitz claimed that the funds were transferred as either fraudulent conveyances or avoidable transfers under 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), and 544 incorporating 740 ILCS 160/6. After a bench trial, the Court entered judgment in favor of Kovnvara and Rani, which Leibowitz appeals.

DOCKETED AUG 5 2003

### Background

In December of 2000, approximately eight months before filing for bankruptcy, Rungsarn sold a rental piece of property from which he netted $96,558.48. He then transferred $10,000 to his ex-wife Rani and $10,000 to his daughter Kovnvara. Rungsarn claims he owed Rani $10,000 because she previously owned the property and executed a quitclaim deed during their divorce on the unwritten promise that he would pay her something from the sale of the property. As for his

daughter, Rungsarn claims that he owed her $16,000 resulting from a loan she made to him in 1998 or 1999, and thus paid her $10,000 as partial payment. However, in his affirmative defenses in his answer to the complaint, Rungsarn stated that he gave her the $10,000 to pay for her wedding, which he reiterated at trial.

As to his personal financial situation, Rungsarn testified that he had a gambling problem and has lost over $50,000 each year for the past several years. On February 23, 2001, he was terminated from his full-time job at Jackson Park Hospital, where he had worked for 29 years. According to his testimony, his salary had been $2,200 per month (or $26,400 annually), although his Statement of Financial Affairs indicates he was making only $23,000 annually. After he lost his job, Rungsarn became depressed and gambled even more. With $950 per month of living expenses, a gambling problem, and no income except the proceeds from the sale of the building, Rungsarn ran out of money in August 2001. On August 23, 2001, he filed for Chapter 7 bankruptcy, and a trustee was assigned.

As part of his Chapter 7 bankruptcy, Rungsarn was required to file a Statement of Financial Affairs disclosing all transfers to insiders within one year of filing for bankruptcy. On his first schedule of affairs, he failed to list the transfers to Rani and Kovnvara. However, at the § 341 meeting on October 2, 2001, he acknowledged that he had transferred $10,000 to both of them. On October 31, 2001, he filed an Amended Schedule of Affairs including these transfers and an income and expense statement with copies of checks drawn showing how he spent the proceeds from the sale of the building.

Leibowitz subsequently filed adverse proceedings under 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), and 544 incorporating 740 ILCS 160/6 (Illinois Uniform Fraudulent Transfer Act

or "UFTA") against Rani and Kovnvara to recover the funds Rungsarn transferred to them.[1] After a bench trial, the Court ruled in favor of Rani and Kovnvara.

Standard of Review

Leibowitz now appeals: (1) the Court's finding that he failed to carry the burden of proving Rungsarn's insolvency; and (2) the Court's ruling as a matter of law that Rungsarn did not intend to defraud his creditors. I "review the courts' legal interpretations *de novo*; however, [I] review the bankruptcy court's findings of fact for clear error only." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002).

Actual Fraud/Fraud in Fact

Leibowitz first claims that the Court improperly determined if there was actual fraud, a claim which I must review *de novo*. Actual fraud, or fraud in fact, requires Leibowitz to prove: (1) a transfer of an interest in property; (2) that the transfer of that property occurred within one year before the bankruptcy filing date; and (3) that the debtor had an actual intent to hinder, delay, or defraud his creditors. 11 U.S.C. § 548(a)(1)(A). The only element at issue here is whether Rungsarn had an actual intent to hinder, delay, or defraud his creditors. Because actual intent is often impractical to demonstrate, bankruptcy courts may use the circumstances surrounding the transfer to infer fraudulent intent. *In re Chevrie*, 2001 Bankr. LEXIS 97, at *27

---

[1] Because the state and federal statutes are functional equivalents, except for the statute of limitations, the analysis is the same. *In re First Commercial Management Group, Inc.*, 279 B.R. 230, 240 (Bankr. N.D. Ill. 2002) (citing *In re Randy*, 189 B.R. 425, 443 (Bankr. N.D. Ill. 1995)).

3

(Bankr. N.D. Ill. Feb. 13, 2001) (citing *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir. 1991)). These circumstances, or badges of fraud, may include: (1) whether the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; (2) whether the debtor retained control of the asset; (3) whether the transfer was to a family member, *In re Chevrie*, 2001 Bankr. LEXIS 97, at *28; (4) whether the transfer was prior to debtor incurring a substantial debt; and (5) whether the transfer was substantially all of debtor's assets. *In re Mussa*, 215 B.R. 158, 168 (Bankr. N.D. Ill. 1997). "Although the presence of a single badge of fraud . . . is insufficient to establish actual fraudulent intent, the confluence of several can constitute conclusive evidence of actual intent, absent significantly clear evidence of a legitimate supervening purpose for the transfer." *In re Chevrie*, 2001 Bankr. LEXIS 97, at *28. In other words, several badges of fraud may create a presumption of fraudulent intent, *id.*, which "imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast," Fed.R.Evid. 301.

Leibowitz claims that three badges of fraud were sufficiently demonstrated at trial: (1) Rungsarn was insolvent or became insolvent as a result of the transfers; (2) the transfers were to family members; and (3) the transfers included substantially all of Rungsarn's assets. On this basis, Leibowitz claims he was entitled to but not given a presumption of Rungsarn's fraudulent intent. From its oral opinion, the Court stated that it did not believe Leibowitz carried his burden of proof on any count and that it did not "believe that [Rungsarn] intended to defraud his creditors," thus preventing Leibowitz from prevailing on his fraud in fact claim. As to the

4

specific badges of fraud, the Court explicitly stated that Leibowitz did not carry the burden to prove Rungsarn was insolvent or became insolvent as a result of the transfer. Accordingly, I will review that finding for clear error only. However, because nothing in the record indicates whether the Court considered if the second or third badges of fraud (transfer to a family member or transfer of substantially all of debtor's assets) were present, I will review each badge *de novo*.

I will first address whether Leibowitz carried the burden to prove Rungsarn was insolvent or became insolvent as a result of the transfers to Rani and Kovnvara. "The UFTA defines insolvency as when 'the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.'" *In re Mussa*, 215 B.R. at 169 (quoting 740 ILCS § 160/3(a)). Rungsarn admitted during the trial that at the time of the transfer to Rani and Kovnvara, he had unpaid debts. He also testified he had no other assets or income except the proceeds from the sale of his building and income from his job. While Rungsarn acknowledged he *did* not pay off all his debts, he never admitted he *could* not have paid off his debts. He netted almost $96,558.48 from the sale of the building. Between the sale of the building and the transfer to Rani and Kovnvara, he spent $6,710.70 of the proceeds on various expenses, leaving $89,847.78. Subtracting the $10,000 he transferred to both Rani and Kovnvara, Rungsarn still retained $69,847.78. Leibowitz presented no evidence at the trial that at the time he transferred the money to Rani and Kovnvara, his debts were greater than $89,847.78 or even $69,847.78. In fact, Leibowitz presented no evidence as to the amount of Rungsarn's outstanding debts at the time of the transfers. In addition, Rungsarn continued to pay various creditors after the transfers, such as $5,113 to Fleet, $5,000 to First USA Bank, $4,823 to First USA Bank, and $2,000 to Chase. Furthermore, after he lost his job and only source of income in February 2001, he increased his

5

gambling and continued to lose money. Out of 45 withdrawals from his account between the time of the transfers and his filing for bankruptcy, only eight were to pay bills. The remaining transactions were to various casinos, to an unknown entity referred to as "H.C.B." or for cash, all of which arguably contributed to his insolvency. Therefore, the Court's finding that there was no evidence that Rungsarn was insolvent or became insolvent as a result of the transfers is not clearly erroneous.

As to whether the transfers in question went to a family member, Leibowitz is correct as to the existence of a badge of fraud on this basis. There is no dispute that Rungsarn made a transfer to his daughter and his ex-wife whom he continued to see socially. While transfers "between family members is not proof per se of fraudulent intent, a familial relationship is weighty proof of such intent," *In re Chevrie*, 2001 Bankr. LEXIS 97, at *28. Unfortunately for Leibowitz, however, the Court's failure to consider this badge of fraud is harmless error because Leibowitz did not sufficiently demonstrate the existence of a badge of fraud on the basis of Rungsarn's transfer of substantially all of his assets. At the time of the transfer, Rungsarn still retained $69,847.78 or nearly 75% from the sale of his building and was working full time. Therefore, he did not transfer "substantially" all of his assets. In sum, because Leibowitz demonstrated only one badge of fraud, he was not entitled to a presumption of fraud at trial. Accordingly, the Court did not commit error in finding that there was no fraudulent intent on the part of Rungsarn, thus sinking Leibowitz's actual fraud claim.

Constructive Fraud/Fraud in Law

Leibowitz also challenges the Court's finding that his constructive fraud claim fails. To prove constructive fraud or fraud in law, Leibowitz must prove: (1) a transfer of an interest in property; (2) that the transfer of that property occurred within one year before the bankruptcy filing date; (3) that the debtor received less than equivalent value in exchange for the transfer; and (4) that the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. 11 U.S.C. §§ 548(a)(1)(B)(i), 548(a)(1)(B)(ii)(I). For the reasons discussed above, the Court did not commit error in finding insufficient evidence proving that Rungsarn was insolvent at the time of the transfers or that Rungsarn became insolvent as a result of the transfers, thus sinking Leibowitz's constructive fraud claim.

For the reasons above, the bankruptcy court's judgment for both defendants is AFFIRMED.

ENTER:

James B. Zagel
United States District Judge

DATE: 1 August 2003